82 N.J. Super. 423 (1964)
197 A.2d 883
SIDNEY RIDDLESTORFFER, JR. AND MAUDE RIDDLESTORFFER, PLAINTIFFS,
v.
CITY OF RAHWAY, ROBERT HENDERSON, AS MAYOR, ROBERT SCHROF, AS CLERK AND AS BUSINESS ADMINISTRATOR, JAMES J. KINNEALLY, AS TREASURER, EUGENE KENNA, AS CHIEF AUDITOR, AND CLIFFORD E. COMER, AS PRESIDENT OF THE COUNCIL OF THE CITY OF RAHWAY AND MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 2, 1964.
*426 Mr. Orlando H. Dey for plaintiffs.
Mr. Joseph M. Feinberg for defendants City of Rahway, Robert Henderson, Robert Schrof, James J. Kinneally, Eugene Kenna and Clifford E. Comer (Messrs. Feinberg & Feinberg, attorneys; Mr. Fred Dubowsky on the brief).
Mr. Eugene M. Haring for defendant Massachusetts Mutual Life Insurance Company (Messrs. McCarter & English, attorneys).
FELLER, J.S.C.
On December 20, 1963 this court rendered its opinion in the above-captioned matter. 82 N.J. Super. 36. It was held that (1) this suit was started within the time limitation required by the rules of court; (2) the action of the municipality did not constitute a donation of public money in violation of the N.J. Const. 1947, Art. VIII, Sec. III, par. 2; (3) the amendment to the proposed budget of the City of Rahway was in conformity with the statutes; (4) the city had the authority to enter into a contract with the insurance carrier, and (5) the contract executed by the business administrator of the city was ratified by the governing body. However, several questions were reserved for further oral argument. The matters left undisposed of are whether or not the members of the city council and the office of mayor are included within the definition of the term "employee," *427 and whether the contract is severable since the statute does not cover retired employees and perhaps does not include the office of mayor and members of the city council. Oral argument was heard on these matters on January 31, 1964.
As to the first question, this court is of the opinion that N.J.S.A. 40:11-15.1 does not contemplate the inclusion of the mayor and members of the city council within the term "employees." There is no definition of the term in question in the statute itself, thus it is assumed that the ordinary and usual understanding of it was intended. It would seem that the members of the city council and the mayor would not be included, since these individuals act as the representatives of the people in the administration of government, and are in reality employers rather than employees. These people act as trustees for the people, administering the trust committed to their charge for the benefit of the corporation and its inhabitants as a whole. 1 McQuillin, Municipal Corporations (3d ed. 1949), sec. 1.108, p. 391. It is an established principle that a municipal or other governmental body is for certain purposes a representative of its citizens and taxpayers. The relation between them is analogous to that between a trustee and his cestui que trust. Pate Hotel Co. v. Morris, 205 N.C. 484, 171 S.E. 779, 780 (1933). Furthermore, the mayor and councilmen acting together for the municipal corporation possess and exercise all legislative and executive powers conferred upon the city. This court cannot conceive of broader powers. They are not only the agents of the city, but the principal  the city itself. See Mason v. Williams, 194 S.C. 290, 9 S.E.2d 537, 542 (1940). Also, where it is in the nature of employment that a contract exist between employer and employee, such is not the case with the governing body and the mayor. In the latter situation the relationship existing between the governing body and the mayor and the people is based, not on contract, but on public trust and confidence, and as a result the relationship can be terminated at the will of the constituency.
*428 Therefore, on the first question it is the opinion of this court that the mayor and members of city council are not included within the statutory definition of the term "employees."
The remaining question concerns the severability of the invalid parts of the contract (parts relating to elected officials and retired employees).
That a contract which includes some prohibited parts is enforceable as to its valid provisions, if the prohibited and the valid provisions are severable, is undisputed. Bauer v. City of Newark, 7 N.J. 426 (1951); 2 Restatement, Contracts, sec. 603, p. 1119 (1932). The determination of whether it is severable depends upon the intention of the parties. Rothman Realty Corp. v. MacLain, 16 N.J. Super. 280 (Ch. Div. 1951), affirmed 21 N.J. Super. 172 (App. Div. 1952). Their intention is to be gathered from the language and subject matter of the agreement. It has been said that a contract is entire when the promise of one party is conditioned on entire performance of the contract by the other, and is divisible when the part to be performed by one party consists of several distinct and severable items respecting which consideration is apportioned to each item or is left to be implied in law. Rothman Realty Corp. v. MacLain, supra.
Applying this formula to the case sub judice there can be no doubt that the agreement here is divisible or severable. In the first place, a group insurance policy is uniquely adapted to severability by reason of the fact that many individuals are covered by it, any number of whom might be dropped from coverage without affecting the coverage of the other members of the group. For instance, if one member happens to die, his coverage is terminated and his premium is no longer paid, but the coverage of all others continues unaffected. If this be the case where one of the group should die, why should not the same results obtain where it is determined that the coverage of certain members is illegal? Furthermore, the policy itself shows that the consideration for the insurance coverage is apportioned as to each person covered by the policy. It is not *429 a lump sum coverage. Thus, the insurance policy consists of several distinct and severable items (each member of the group). Also, the agreement itself sets out that the consideration is apportioned to each item. In view of this, it must be found that the parties intended the contract to be severable, and that the legal provisions may stand. Coverage of retired employees and elected officials may be terminated by amendment of the contract or by merely deleting from the contract any reference to these individuals.
On the foregoing, as well as on other issues in this case, it is evident there is no genuine issue as to a material fact and that the same may be disposed of on motions for summary judgment. See Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954).
A point not raised during the hearing, but which has occurred to the court, remains to be discussed. This point may be presented as two questions, as follows:
(1) Is the payment by the city of the premiums to be considered a salary increase requiring the passage of an ordinance by the governing body? (N.J.S.A. 40:46-23);
(2) If so, what is the effect of there not having been such an ordinance?
N.J.S.A. 40:46-23 recites that:
"The governing body may, by ordinance, notwithstanding any maximum or minimum limitation fixed by statute, fix and determine the salaries, wages or compensation to be paid to each officer and employee of the municipality * * *."
The power to "fix and determine" salaries includes the power to increase the same, and the latter would also require an ordinance of the governing body. Howard v. Mayor, etc., 6 N.J. 373 (1951). Furthermore, when the statute provides that an ordinance is required, a resolution will not suffice. Ibid., at p. 377 of 6 N.J. Since it has been held that the payment of the insurance premiums by the city is additional compensation to the employees (see the opinion in this case in 82 N.J. Super. 36; see also N.J.S.A. 40:11-16.1), it *430 logically follows that this amounts to an increase of their salaries, thereby requiring the passage of an ordinance.
The vote adopting the budget was not an ordinance fixing salaries. Councillors of Brockton v. Gildea, 343 Mess. 631, 180 N.E.2d 77 (Sup. Jud. Ct. 1962). N.J.S.A. 40:46-23 contemplates prior action, independent of the consideration of the budget. It is therefore the opinion of this court that a salary increase by way of the payment of insurance premiums requires the passage of an ordinance just as an ordinary cash increase would.
The next inquiry is whether the failure to pass an ordinance affects the insurance contract here involved. In the opinion previously rendered it was said that the city clerk was not an authorized person to contract for the city; that this rendered the contract ultra vires in the secondary sense, but that through ratification of his action the contract could still stand. It is the opinion of this court that the present question is to be resolved in much the same manner. For, as was already said, the contract was one the city could lawfully enter. The failure to pass an ordinance increasing the employees' salaries does not detract from the power of the city to enter the contract, but is merely an improper way of proceeding. In such a case the courts have applied the doctrine of estoppel. In fact, ratification and estoppel are often intermixed by the courts, one being mentioned when the other is intended.
Both doctrines are spoken of in City Affairs Committee v. Bd. of Com'rs of Jersey City, 134 N.J.L. 180 (E. & A. 1946), in which it was contended that a contract was entered into without a budget appropriation having been made. The court there observed:
"* * * It is the general rule that even a contract ultra vires for failure of an appropriation or other act made a condition precedent by statute may be ratified by performance of the condition essential to a valid agreement in the first instance, e.g., the making of the required appropriation. Gutta-Percha & Rubber Mfg. Co. v. Village of Ogalalla, 40 Neb. 775, 59 N.W. 513; 44 C.J. 1146. Of course, a contract wholly and fundamentally beyond the power of the municipality, *431 as distinguished from a corporate power conditioned as to exercise, is utterly void, and therefore incapable of ratification. But it is also a rule of general acceptance (indeed, a modern text writer cites no case contrariwise) that an ultra vires contract made by a municipality which has been fully performed by both parties is no longer assailable by either party. 38 Am. Jur. 183. This principle has been applied to cases where, as here, the municipal corporation is empowered to enter into the particular contract, but the contract is ultra vires in the restricted or secondary sense that the power has been defectively or irregularly exercised, and the municipality has received the benefits of the contract and paid the stipulated price." (at pp. 183-4 of 134 N.J.L.)
As can be seen, both ratification and estoppel are spoken of with approval.
That these doctrines are still vital in this State may be seen from the recent case of 405 Monroe Co. v. Asbury Park, 40 N.J. 457 (1963), in which the Supreme Court said:
"We have heretofore noted `the strong recent trend towards the application of equitable principles of estoppel against public bodies where the interests of justice, morality and common fairness clearly dictate that course.' * * * In such circumstances, one who deals with the municipality in good faith may be permitted to invoke the concept of ratification, [citation omitted], or estoppel [citations omitted]; * * *." (at p. 463 of 40 N.J.; emphasis added)
Certainly in the instant case there has been performance by both parties to the contract, and benefits have been conferred upon the city. The affidavit of Peter J. Moynihan, District Group Representative of Massachusetts Mutual Life Insurance Company, dated October 3, 1963, recites that up to October 2, 1963, $4,287.89 had been paid in claims under this policy to employees of the City of Rahway. A supplementary affidavit of Peter J. Moynihan, dated January 28, 1964, recites further that up to January 1, 1964, $13,154.21 in claims has been paid. In such case this court feels compelled to follow "the strong recent trend towards the application of equitable principles of estoppel against public bodies where the interests of justice, morality and common fairness clearly dictate that course." See also Bell v. Kirkland, 102 Minn. 213, 113 N.W. 271, 13 L.R.A., N.S. 793 (1907). Furthermore, *432 just as the municipality is estopped from denying its liability under the contract, so too is a taxpayer or one claiming a derivative right, as the plaintiff here does. 18 McQuillin, op. cit., sec. 52.03a, p. 4; sec. 52.15, p. 31. In fact, the law seems to be settled that the taxpayers of a municipal corporation when suing for the benefit of the corporation can recover only on the basis for which said municipal corporation could recover. Mason v. Williams, supra. See also Neisuis v. Henry, 142 Neb. 29, 5 N.W.2d 291 (1942), rehearing denied 143 Neb. 273, 9 N.W.2d 163; 64 C.J.S. Municipal Corporations § 2138, p. 951; § 2159, p. 985.
Therefore, it is the opinion of this court that the contract is not affected by the lack of an ordinance.
A final point raised by plaintiffs in their supplemental brief and at the hearing on January 31, 1964 deals with the allegation that defendants' action in negotiating and making the contract involved a breach of fiduciary duty. They contend that this raises a fact issue which precludes the rendering of summary judgment on all issues. It is argued that this issue was raised by paragraphs 20(e), (g) and (i) of the complaint.
Paragraph 20(e) alleges noncompliance with N.J.S. 40A:5-16 requiring a duly certified, detailed bill, specifying particularly how the amount of the premium payment was made up; N.J.S. 40A:5-17, requiring approval of claims in the manner prescribed by the governing body and N.J.S. 40A:5-18, requiring a public record of approval.
This court feels that compliance with these statutory requirements has been established by defendants' Exhibit H, the affidavits of Eugene F. Kenna and James T. Kinneally, and the supplemental affidavit of Eugene F. Kenna. Defendants' Exhibit H is a copy of the voucher particularizing the July premium payment to Massachusetts Mutual. It is certified by a representative of Massachusetts Mutual and by representatives of the City of Rahway. The affidavit of the City Comptroller Eugene F. Kenna, dated August 30, 1963, further states that there was certification by the appropriate *433 department head before payment of the claim was approved in the manner required by Title II, Chapter VII, sections 4 and 5 of the Administrative Code of the City of Rahway, enacted pursuant to N.J.S. 40A:5-17. Finally, the supplemental affidavit of the city comptroller, dated September 3, 1963, states that the record of approval of the claim was open to the public, as required by N.J.S. 40A:5-18. No counter-affidavits have been offered by plaintiffs on these points, and it is the opinion of this court that the conclusion is unescapable that no genuine issue of fact remains as to them.
Paragraphs 20(g) and (i) of the complaint, upon which plaintiffs further rely in resisting the motion for summary judgment, may be treated together since these are the allegations of breach of fiduciary duty. 20(g) alleges a violation of public trust and fiduciary duties by defendants by their failure to exercise their discretionary powers in good faith and on fair and intelligent consideration free from corrupting influence. Point 20(i) alleges that the award of the contract was accomplished in secrecy, without the appropriate publicity, frankness and disclosures required by law of public officers in the transaction of public business.
This court is of the opinion that the above are merely unsupported allegations giving rise to no issue which will defeat a meritorious application for summary judgment. That no genuine issue as to a material fact exists as to those allegations is made clear by plaintiffs' own complaint, paragraphs 15-16, in which it is stated that at a meeting held on June 27, 1963 and attended by eight of the nine councilmen, the mayor, business administrator and members of the committee of city employees, the proposals of four different insurance companies were considered and by a vote of five councilmen in favor and three opposed, the proposal of Massachusetts Mutual was approved. Pursuant to this, the city clerk accepted the Massachusetts Mutual proposal. There having been such consideration and vote by the council, as admitted by plaintiffs, this court fails to see how they can now allege that defendants failed to exercise their discretionary powers in *434 good faith and on fair and intelligent consideration, free from corrupting influences, or that the award of the contract was accomplished in secrecy, without the proper publicity, frankness and disclosure required by law. Their own complaint contains the above allegations, and is persuasive that no genuine issue of fact remains.
The selection of group insurance rested within the discretion of the municipal authorities, with no obligation upon them of accepting the lowest bid. A.C. Schultes & Sons v. Haddon Twp., 8 N.J. 103 (1951); Peters Garage v. City of Burlington, 121 N.J.L. 523 (Sup. Ct. 1939), affirmed 123 N.J.L. 227 (E. & A. 1939). Plaintiffs have put forth nothing more by way of affidavit or otherwise to sustain their contention that a fact issue exists. Their affidavit directed toward this end is that of Ferdinand P. Wolcott, an employee of the Garden State Hospitalization Plan, stating that his company offered to supply benefits equal to or greater than those offered by the Massachusetts Mutual proposal for a lower premium. However, as has been stated above, there was no obligation upon the municipal authorities to accept the lowest bid, and their failure to do so is not evidence of bad faith.
Since no genuine issue as to any material fact remains, defendants are entitled to judgment as a matter of law.
The conclusions reached in this supplementary opinion are:
(1) The mayor and members of city council are not included within the definition of the term "employees," and therefore are not entitled to the benefits of N.J.S.A. 40:11-16.1;
(2) The invalid parts of the contract are severable;
(3) The contract is not affected by the lack of an ordinance raising salaries;
(4) There was no breach of fiduciary duties by the municipal authorities.